UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, ) | No. EDCV 09-0141-RC |
| ) | |
| Plaintiff, ) | |
| ) | OPINION AND ORDER |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Todd Hall filed a complaint on January 26, 2009, seeking review of the Commissioner's decision denying his application for disability benefits. On June 16, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on July 27, 2009.

**BACKGROUND**

On September 6, 2006, plaintiff, who was born on January 20, 1966, applied for disability benefits under the Supplemental Security Income program of Title XVI of the Social Security Act ("Act"), claiming an inability to work since February 1, 2005, due to

neuropathy in his legs and feet, strokes, diabetes, a tracheal stent, and left hip pain. Certified Administrative Record ("A.R.") 87-89, 100. The plaintiff's application was initially denied on January 17, 2007, and was denied again on April 13, 2007, following reconsideration. A.R. 40-52. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Charles E. Stevenson ("the ALJ") on May 13, 2008. A.R. 19-37, 58. On September 17, 2008, the ALJ issued a partially favorable decision, finding plaintiff was disabled from February 1, 2005, to April 2, 2006, but not thereafter. A.R. 5-18. The plaintiff appealed this decision to the Appeals Council, which denied review on November 24, 2008. A.R. 1-4.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not

2

substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 416.920(f).

If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity between February 1, 2005, and April 1, 2006. (Step One). The ALJ then found plaintiff "is status post[-]tracheal stent placement, has a loss of his spleen due to an accident, has diabetes with neuropathy and a history of ketoacidosis which in combination are severe"; however, he does not have a severe mental impairment. (Step Two). The ALJ next

---

[1] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

4

determined that from February 1, 2005, through April 1, 2006, plaintiff's impairments medically equaled a Listing; however, he experienced medical improvement as of April 2, 2006, and he has not had an impairment or combination of impairments that meets or equals a Listing since then. (Step Three). The ALJ then found that, as of April 2, 2006, plaintiff remained unable to perform his past relevant work. (Step Four). Finally, the ALJ concluded that since April 2, 2006, plaintiff is able to perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

**II**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d

5

at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); Webb, 433 F.3d at 686.

At Step Two, the ALJ found plaintiff does not have a severe mental impairment. The plaintiff complains this finding is erroneous because the ALJ failed to properly consider the opinion of examining psychologist Stuart Courtney, Ph.D. There is no merit to this claim.

"[T]he ALJ may only reject . . . [an] examining physician's uncontradicted medical opinion based on 'clear and convincing reasons[,]'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

On December 28, 2006, Dr. Courtney examined plaintiff, conducted psychological testing, and diagnosed plaintiff as having an amnestic disorder due to medical history, alcohol dependence, and polysubstance drug abuse/dependence in remission (per plaintiff's report), and determined plaintiff's Global Assessment of Functioning ("GAF") was 55.[2]  A.R. 248-54.  Dr. Courtney opined plaintiff has:  a "slight" impairment in his ability to complete a normal workday or work week without interruptions resulting from his emotional issues; a "mild" impairment in his ability to deal with the usual stresses encountered in competitive work due to a mild cognitive impairment; and no impairment in his ability to do simple and repetitive or detailed and complex tasks, maintain regular attendance, perform work activities on a consistent basis, perform work activities without special or additional supervision, accept instructions from supervisors, and interact with co-workers and the public.  A.R. 253-54.  On January 11, 2007, nonexamining psychiatrist H.N. Hurwitz, M.D., opined plaintiff does not have a severe mental impairment.  A.R. 278-88, 290.

The ALJ, considering plaintiff's testimony at the administrative hearing, the opinions of Drs. Courtney and Hurwitz, and third party statements, determined there is "no basis in the record for a severe mental impairment," stating:

//

---

[2]  A GAF of 55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

7

> The [plaintiff] testified that he was not depressed, although third party statements of record made reference to the [plaintiff] appearing to be confused and to have trouble remembering things. A consultative psychological evaluation completed [by Dr. Courtney,] . . . which included testing[,] showed overall cognitive functioning to not be significantly impaired, although some memory problems were indicated. Nonetheless, no impairment was noted except for a slight limitation with respect to completing a normal work day and work week without interruption, and with respect to dealing with usual work stresses. [¶] The reviewing medical consultant with the State Agency [Dr. Hurwitz] determined the evidence did not support the presence of a severe mental impairment. There is no medical opinion which contradicts this assessment.

A.R. 12 (citations omitted).

Nevertheless, plaintiff complains the ALJ's Step Two determination that he does not have a severe mental impairment is not supported by substantial evidence because the ALJ did not specifically discuss Dr. Courtney's GAF assessment. Jt. Stip. at 3:4-4:20, 7:3-17. Although this Court has at times found error when an ALJ determines a claimant does not have a severe mental impairment without specifically addressing a physician's GAF assessment of 60 or below, see, e.g., Pham v. Astrue, __ F. Supp. 2d __, 2010 WL 148206, *3 n.6 (C.D. Cal.); Haly v. Astrue, 2009 WL 2767677, *4 (C.D. Cal.); Roach v. Astrue, 2009 WL 2407961, *4 (C.D. Cal.), that is not always so. In these cases,

the ALJ either failed to discuss any aspect of the physician's opinions or the GAF score was the only assessment of the claimant's level of functioning by the physician.  See Pham, __ F. Supp. 2d at __, 2010 WL 148206 at *3 n.6; Haly, 2009 WL 2767677 at *4; Roach, 2009 WL 2407961 at *4; see also American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. (Text Revision) 2000) (GAF score reflects "the clinician's judgment of the individual's overall level of functioning" regarding only psychological, social and occupational functioning but not considering physical or environmental limitations).  Here, Dr. Courtney specifically addressed the limitations caused by plaintiff's mental condition, A.R. 253-54, and the ALJ considered and relied on Dr. Courtney's assessment of plaintiff's slight-to-no limitations in determining plaintiff does not have a severe mental impairment. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Chavez v. Astrue, __ F. Supp. 2d __, 2009 WL 5172857, *6 (C.D. Cal.). The ALJ's Step Two determination that plaintiff does not have a severe mental impairment is supported by the opinions of Drs. Courtney and Hurwitz; in fact, there is no evidence to the contrary.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support the ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), cert. denied, 519 U.S. 1113 (1997).

//

//

**III**

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Bray v. Astrue, 554 F.3d 1219, 1222 (9th Cir. 2009; Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007). To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite [his] identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[3] Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Bray, 554 F.3d at 1223 n.4. However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Bray, 554 F.3d at 1223 n.4.

//

---

[3] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

10

1 Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009); <u>Thomas</u>, 278 F.3d at 956, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." <u>Tackett</u>, 180 F.3d at 1101. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1995) (quoting <u>Delorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991)); <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001).

Here, the ALJ asked vocational expert Susan Ellison the following hypothetical question:

> Now let's consider light work[4] generally with standing and walking four of eight [hours]. Also occasionally pushing and pulling with the arms and occasional arms control. No foot pedals. No commercial driving. Occasional stairs but no ladders, ropes, scaffolding. Occasional stooping,

---

[4] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

1       crouching, no crawling.  No unprotected heights.  No
2       hazardous equipment.  No concentrated fumes, odors, dust,
3       gases.  And no marked temperature changes.  That would
4       exclude past work.  Would there be other work that could be
5       done?

7 A.R. 35-36 (footnote added).  The vocational expert responded that the
8 individual could work as a cashier II or a general office clerk.  A.R.
9 36.

11     The plaintiff contends, however, that the hypothetical question
12 is inadequate because it does not include his mental limitations.
13 There is no merit to plaintiff's contention since any error in failing
14 to include the "mild" limitation Dr. Courtney found was harmless.
15 See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)
16 ("The court will not reverse an ALJ's decision for harmless error,
17 which exists when it is clear from the record that the ALJ's error was
18 inconsequential to the ultimate nondisability determination."
19 (citations and internal quotation marks omitted)); Edior v. Astrue,
20 2010 WL 797175, *7 (C.D. Cal.) ("[S]ince Dr. Smith found plaintiff has
21 only 'mild' mental limitations, the ALJ's failure to include those
22 limitations in the hypothetical question was harmless error since they
23 have no effect on plaintiff's ability to work."); Gifford v. Astrue,
24 2010 WL 454491, *13 (C.D. Cal.) (any error in failing to address
25 impact mental impairment had on ability to work was harmless error
26 when examining and nonexamining physicians found only mild
27 limitations); Stroh v. Astrue, 2010 WL 572590, *9 (D. Or.) ("[A]ny
28 error arising from the ALJ's failure to incorporate the mild

limitations in concentration, persistence, and pace into the [RFC] assessment was harmless. The ALJ provided sufficient reasons for concluding that plaintiff's mental impairment, from which these limitations arise, is not 'severe' within the meaning of relevant regulations. . . . Given that plaintiff's mental impairment was reasonably found to cause no more than a minimal effect on her ability to work, the ALJ's failure to incorporate mild limitations in concentration, persistence, and pace into the residual functional capacity was harmless error." (citations omitted)). Therefore, the vocational expert's testimony provides substantial evidence to support the ALJ's Step Five determination that plaintiff can perform a significant number of jobs in the national economy. Valentine, 574 F.3d at 694; Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001)

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: April 15, 2010         /S/ ROSALYN M. CHAPMAN
                             ROSALYN M. CHAPMAN
                             UNITED STATES MAGISTRATE JUDGE

R&R-MDO\09-0141.mdo
4/15/10